IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN MULLIGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| VILLAGE OF RIVERSIDE, an Illinois Corporation; MATTHEW BUCKLEY | ) | Judge |
| | ) | |
| | ) | Magistrate Judge |
| Defendants. | ) | |
| | ) | |

## *COMPLAINT AT LAW*

NOW COMES the Plaintiff, KEVIN MULLIGAN, by and through his attorneys ELLIOT R. ZINGER & ASSOCIATES and THE LAW OFFICES OF DANIEL Q. HERBERT & ASSOCIATES, and presents his Complaint at Law and in support thereof, complains as follows:

### *NATURE OF THE ACTION*

1. This is an action under Title II of the Americans with Disabilities Act and Section 1983 of the United States Code to correct unlawful employment practices on the basis of disability and to provide appropriate relief to KEVIN MULLIGAN (hereinafter "MULLIGAN"), who was subjected to discrimination and retaliation based upon being disabled, and for exercising the rights enumerated above by his employer, the VILLAGE OF RIVERSIDE.

### *PARTIES TO THE ACTION*

2. At all relevant times, MULLIGAN was a duly qualified firefighter employed by defendant VILLAGE OF RIVERSIDE an Illinois municipal corporation.

3. At all relevant times, the VILLAGE OF RIVERSIDE was incorporated in the State of Illinois and is a municipality within the State of Illinois.

4. At all relevant times, the VILLAGE OF RIVERSIDE was an employer as defined and codified in 42 U.S.C. § 12111(5).

5. At all relevant times, the VILLAGE OF RIVERSIDE was a public entity as defined and codified in 42 U.S.C. § 12131(1)(A).

6. At all relevant times, MATTHEW BUCKLEY ("BUCKLEY") was an officer of the VILLAGE OF RIVERSIDE's fire department. BUCKLEY is sued in his official capacity as a firefighter for the VILLAGE OF RIVERSIDE.

7. At all relevant times, MULLIGAN was an employee of the VILLAGE OF RIVERSIDE as defined and codified in 42 U.S.C. § 12111(4).

## *JURISDICTION AND VENUE*

8. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1343, and 1345. This action is authorized and instituted pursuant to Title II of the Americans with Disabilities Act, codified at 42 U.S.C. § 12101, *et seq.* (hereinafter referred to as "Title II") and pursuant to 42 U.S.C. § 1983.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1)(2) and (3), in that the Defendants reside and may be found in this district and all of the events occurred in this district.

10. All conditions precedent to the institution of this lawsuit have been fulfilled, including receipt of a right-to-sue letter issued by the Equal Employment Opportunity Commission ("EEOC") on August 22, 2011 and received by MULLIGAN on September 10, 2011. *See* Exhibit A.

## *STATEMENT OF FACTS*

11. MULLIGAN was appointed fire chief of the VILLAGE OF RIVERSIDE in May 2006 after twenty-two years as a firefighter with the village.

12. On December 8, 2008, BUCKLEY was the deputy fire chief working directly under MULLIGAN's direction.

13. On December 8, 2008, BUCKLEY filed a false complaint against MULLIGAN alleging he was intoxicated at work. This was the onset of what would become a full-blown campaign to portray MULLIGAN as an alcoholic and thereby advance his own career.

14. Then Village Manager Katy Rush ("Rush") conducted a series of interviews of village employees as part of her investigation into BUCKLEY's allegations.

15. On December 30, 2008, MULLIGAN was sent for an alcohol evaluation through the Village Employee Assistance Program. The evaluator found MULLIGAN was not alcohol dependent.

16. On December 31, 2008, and despite the test results, the VILLAGE OF RIVERSIDE perceived MULLIGAN as disabled and required that he sign a "contract" that prohibited him from consuming alcohol while conducting village work.

17. On March 3, 2009, unsatisfied with the first results but undeterred, the VILLAGE OF RIVERSIDE sent MULLIGAN for a second and more detailed alcohol evaluation. Again, MULLIGAN was found to not be alcohol dependent.

18. BUCKLEY was notified that MULLIGAN had passed his evaluations and was coming back to work. BUCKLEY was encouraged by village manager Rush to report if he saw MULLIGAN intoxicated and told that such a report would lead to an immediate breathalyzer.

19. Rush also warned BUCKLEY that if such a complaint against MULLIGAN was unfounded, it would lead to discipline up to an including termination. BUCKLEY did not file another complaint with Ms. Rush.

20. The VILLAGE also sent MULLIGAN to Dr. Daven Morrison for a leadership evaluation combined with a third alcohol evaluation. Again, MULLIGAN was found to be free of alcohol dependence.

21. In April 2009, Michael Gorman ("Gorman") was elected to Village President. In May 2009, Rush resigned from the position of Village Manager, effective immediately.

22. In May 2009, Gorman hired Robin Weaver to replace Rush. Once Rush was gone, BUCKLEY once again began to file unfounded complaints that MULLIGAN was drinking.

23. MULLIGAN offered to submit immediately for alcohol testing in accordance with his contract with the village. MULLIGAN also complained to Weaver that BUCKLEY and thereby the VILLAGE OF RIVERSIDE was re-engaging in a pattern of harassment. Ms. Weaver declined MULLIGAN's invitation to submit to alcohol testing or to take any steps to remedy BUCKLEY's harassment.

24. BUCKLEY then began to fail to follow MULLIGAN's commands.

25. In September 2009, Gorman appointed Peter Scalera as the new Village Manager. Again, BUCKLEY began to file unfounded complaints that MULLIGAN was violating the village's alcohol policy. MULLIGAN once again agreed to submit to alcohol testing, but the village declined the offer.

26. In April 2010, MULLIGAN was reappointed to fire chief and given a three-year contract by the VILLAGE OF RIVERSIDE's board of trustees following a glowing review.

27. Gorman, already perceiving MULLIGAN as disabled due to alcohol dependence, refused to offer any positive comments about MULLIGAN during his reappointment.

28. Following MULLIGAN's reappointment, BUCKLEY submitted a request to MULLIGAN and Scalera that he be reappointed to captain because he could not work with MULLIGAN.

29. Despite MULLIGAN's protestations, BUCKLEY was reassigned to captain on a trial basis.

30. On June 18, 2010, BUCKLEY filed another unfounded allegation that MULLIGAN was intoxicated on the job. BUCKLEY had his lawyer memorialize his complaint in writing on August 24, 2010, which now included statements from firemen Kevin Kuratko and Chris Augustine in support.

31. Throughout 2010, BUCKLEY had retained a private investigator to follow MULLIGAN and videotape him at locations in and around Riverside. BUCKLEY presented the tapes to Gorman and village attorney Tom Melody.

32. BUCKLEY falsely alleged that the tapes showed MULLIGAN consuming alcohol.

33. On October 14, 2010, the VILLAGE OF RIVERSIDE held an administrative hearing on charges against MULLIGAN related to the videotapes submitted by BUCKLEY and his lawyer. BUCKLEY, his lawyer and private investigator all testified against MULLIGAN.

34. At the conclusion of evidence, the village board found MULLIGAN not guilty and he was restored to the position of fire chief.

35. MULLIGAN inquired with Scalera whether he could discipline BUCKLEY in the event of further disturbances to the operations of the fire department. Scalera said village

attorney Thomas Melody advised that MULLIGAN should not discipline BUCKLEY as it would "appear retaliatory."

36. On January 20, 2011, Gorman told MULLIGAN that he had better "fix it" when referring to problems between him and BUCKLEY or that "he would." This directive was pre-textual and in preparation to fire MULLIGAN based upon Gorman's belief that MULLIGAN was alcohol dependent.

37. On January 25, 2011, Scalera discussed the problems with BUCKLEY to MULLIGAN and told him he'd better "fix it." MULLIGAN again noted to Scalera that he had been warned not to discipline BUCKLEY. Scalera was aware of MULLIGAN's predicament.

38. On February 3, 2011, BUCKLEY made another complaint to Scalera about MULLIGAN consuming alcohol although MULLIGAN was not on duty at the time. Scalera immediately drove to see MULLIGAN and did discover that in fact MULLIGAN was not on duty. Gorman and Scalera declined to discipline BUCKLEY for submitting another false report.

39. Despite the undisputed fact that MULLIGAN was not on duty, Gorman directed Scalera to submit a report of the incident to the village board by February 7, 2011 for disciplinary reasons.

40. On February 7, 2011, the village board ordered Scalera to investigate BUCKLEY's allegation further.

41. On February 9, 2011, Gorman asked MULLIGAN to meet with him at approximately 3:30 p.m. At the meeting, Gorman told MULLIGAN that he intended to terminate him at the February 21, 2011 board meeting and had at least four board votes to do it.

42. Gorman's actions were based upon his perception that MULLIGAN was disabled as a result of alcohol dependency.

6

43. Between February 9 and February 21, MULLIGAN submitted several emails to Scalera reiterating the harassment and hostile work environment he had been subjected to by BUCKLEY, Gorman, and the board.

44. On February 23, 2011, MULLIGAN was placed on administrative leave pending investigation of BUCKLEY's latest allegations.

45. In Mid-March, Fire Captain Bill Sherman was named as officer in charge of the fire department. During that same time, Scalera held a meeting with MULLIGAN during which he offered him a resignation package.

46. On March 22, 2011, Sherman sent out an intra-department email stating that BUCKLEY would be the officer in charge between March 26 and April 3, 2011.

47. On March 29, 2011, Scalera notified MULLIGAN via a phone call that the village board had terminated MULLIGAN the prior evening. MULLIGAN's termination was due to the board and thereby the village's belief that MULLIGAN was disabled due to alcohol dependency and in retaliation for complaining of harassment.

### *COUNT I – VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT*

48. MULLIGAN repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through forty-seven as if fully set forth herein.

49. MULLIGAN was sworn as the fire chief of the VILLAGE OF RIVERSIDE in May 2006.

50. On December 8, 2008, in May 2009, September 2009 and on June 18, 2010, BUCKLEY notified the VILLAGE OF RIVERSIDE that MULLIGAN was alcohol dependent and was unable to perform his job satisfactorily.

51. At all relevant times, THE VILLAGE OF RIVERSIDE perceived MULLIGAN as disabled and unable to perform one or more major life activities as defined and codified in the Americans with Disabilities Act, 42 U.S.C. § 12102.

52. At all relevant times, Gorman regarded and perceived MULLIGAN as having a disability that prohibited him from performing one or more major life activities.

53. On October 14, 2010, the VILLAGE OF RIVERSIDE held an administrative hearing pursuant to charges filed against MULLIGAN. The Board of Trustees found in MULLIGAN's favor and concluded he had not used alcohol at work.

54. Despite this finding, Gorman continued to perceive MULLIGAN as disabled and set out to terminate him.

55. On January 20, 2011, Gorman made a pretextual threat to terminate MULLIGAN if he didn't "fix" the problem with BUCKLEY. The VILLAGE OF RIVERSIDE simultaneously made it clear that MULLIGAN was prohibited from disciplining BUCKLEY.

56. On January 25, 2011, Scalera repeated Gorman's pretextual threat that MULLIGAN would be terminated if he did not "fix" the problem. Both threats were made as pretext to fire MULLIGAN based on a perception that he was disabled.

57. On February 9, 2011, Gorman asked MULLIGAN to meet with him at approximately 3:30 p.m. At the meeting, Gorman told MULLIGAN that he intended to terminate him at the February 21, 2011 board meeting and had at least four board votes to do it.

58. On February 23, 2011, MULLIGAN was placed on administrative leave pending investigation of BUCKLEY's latest allegations.

59. On March 29, 2011, Scalera notified MULLIGAN via a phone call that the village board had terminated MULLIGAN the prior evening. MULLIGAN's termination was due to the board and thereby the village's belief that MULLIGAN was disabled due to alcohol dependency.

60. As a result of the aforementioned discriminatory acts of the VILLAGE OF RIVERSIDE, MULLIGAN has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, MULLIGAN demands judgment against the VILLAGE OF RIVERSIDE in an amount in excess of $100,000.00, and for all legal and equitable relief available pursuant to Title II of the Americans with Disabilities Act, plus attorneys' fees, litigation expenses and cost of suit.

## *COUNT II – RETALIATION*

61. MULLIGAN repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through forty-seven as if fully set forth herein.

62. That MULLIGAN submitted several complaints to village managers Weaver and Scalera that he was the subject of consistent harassment from BUCKLEY and that the VILLAGE OF RIVERSIDE had created a hostile working environment.

63. That following the complaints, Gorman began to conspire with other board members to terminate MULLIGAN.

64. On February 9, 2011, Gorman asked MULLIGAN to meet with him at approximately 3:30 p.m. At the meeting, Gorman told MULLIGAN that he intended to terminate him at the February 21, 2011 board meeting and had at least four board votes to do it.

65. On March 28, 2011, the VILLAGE OF RIVERSIDE voted to terminate MULLIGAN in part due to his complaints of being harassed and subjected to a hostile working environment.

66. As a result of the aforementioned retaliatory acts of the VILLAGE OF RIVERSIDE, MULLIGAN has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, KEVIN MULLIGAN demands judgment against the VILLAGE OF RIVERSIDE in an amount in excess of $100,000.00, and for all legal and equitable relief available, plus attorneys' fees, litigation expenses and cost of suit.

## COUNT III – VIOLATION OF 42 U.S.C. § 1983 VIA THE AMERICANS WITH DISABILITIES ACT

67. MULLIGAN repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through forty-seven as if fully set forth herein.

68. That MULLIGAN's federally protected right under Title II of the Americans with Disabilities Act, codified at 42 U.S.C. § 12101, *et seq.* against unlawful discrimination was violated by the VILLAGE OF RIVERSIDE.

69. That at all relevant times complained of, the VILLAGE OF RIVERSIDE and its agents acted under color of law while violating MULLIGAN's federally protected rights.

70. That the acts of the VILLAGE OF RIVERSIDE, as set forth above, were pursuant to a custom, policy and practice to discriminate against its employees with disabilities and those that complained of harassment.

71. That as a result of the aforementioned intentionally discriminatory acts of the VILLAGE OF RIVERSIDE, MULLIGAN suffered and will likely continue to suffer grievous

harm including, without limitation, substantial loss of income, loss of earnings potential, loss of enjoyment of life, physical injury and severe emotional distress.

WHEREFORE, KEVIN MULLIGAN demands judgment against the VILLAGE OF RIVERSIDE in an amount in excess of $100,000.00, and for all legal and equitable relief available pursuant to 42 U.S.C. § 1983, plus attorneys' fees, litigation expenses and cost of suit.

### COUNT IV – DEFAMATION PER SE

72. MULLIGAN repeats, realleges and incorporates by reference the factual allegations of paragraphs one through forty-seven as if fully set forth herein.

73. That BUCKLEY made statements to Gorman, Scalera and Rush that MULLIGAN was consuming alcohol on duty.

74. That BUCKLEY's allegations were false.

75. That as a result of BUCKLEY's allegations, MULLIGAN's employment with the VILLAGE OF RIVERSIDE was terminated.

76. That as a result of BUCKLEY publishing untrue statements about MULLIGAN, he suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income, loss of earnings potential, loss of enjoyment of life, physical injury and severe emotional distress.

WHEREFORE, KEVIN MULLIGAN demands judgment against MATTHEW BUCKLEY in an amount in excess of $100,000.00, and for all legal and equitable relief available pursuant to 42 U.S.C. § 1983, plus attorneys' fees, litigation expenses and cost of suit.

### COUNT V – MONELL CLAIM

77. MULLIGAN repeats, realleges and incorporates by reference the factual allegations of paragraphs one through forty-seven as if fully set forth herein.

78. That the acts of the VILLAGE OF RIVERSIDE, including discriminating and discharging MULLIGAN as set forth above, were pursuant to a custom, policy and practice to discriminate against employees that complain of discrimination and/or harassment in the workplace.

79. That in furtherance of that custom policy and practice, the VILLAGE OF RIVERSIDE likewise discriminated against and retaliated against Cathy Haley after she complained of sexual harassment following Gorman's alleged unwanted touching and unannounced visit to her home.

WHEREFORE, KEVIN MULLIGAN demands judgment against the VILLAGE OF RIVERSIDE in amount in excess of $100,000.00, and for all legal and equitable relief available pursuant to Title II of the Civil Rights Act, 42 U.S.C. § 1983, plus attorneys' fees, litigation expenses and cost of suit.

## *JURY DEMAND*

80. Plaintiff demands trial by jury pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981 a(c)(1).

    Respectfully submitted,

    ELLIOT R. ZINGER & ASSOCIATES


    By: ____/s/ Patrick J. Walsh_____
          Patrick J. Walsh, Esq.
          One of Plaintiff's Attorneys

Patrick J. Walsh, Esq.
ELLIOT R. ZINGER & ASSOCIATES
10 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312) 782-9464
Atty. No. 6287629

Daniel Q. Herbert, Esq.
LAW OFFICES OF DANIEL Q. HERBERT & ASSOCIATES
206 South Jefferson, Suite 100
Chicago, Illinois 60661
(312) 655-7660
Atty. No. 6273940